```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION


   PATRICK EKANEM,                )
                                  )
              Plaintiff,          )
                                  )
         v.                       )   No. 12 C 359
                                  )
   CITY OF CHICAGO,               )
                                  )
              Defendant.          )
```

## MEMORANDUM OPINION AND ORDER

Patrick Ekanem ("Ekanem") alleges that the City of Chicago ("City") refused to reinstate him as a Firefighter-EMT candidate with the Chicago Fire Department because of his race (black) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. I grant the City's motion for summary judgment for the reasons stated below.

### I.

I start with two preliminary matters: (1) how Ekanem's failure to oppose the City's motion shapes my view of the facts at this stage and (2) how my prior rulings on the City's two motions to dismiss limit the scope of Ekanem's claim.

### A.

Ekanem fired his attorney shortly before his response to the City's motion for summary judgment was due. At a status hearing on March 26, 2014, I determined that Ekanem was competent to

litigate this case without the assistance of appointed counsel. *See Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc) (articulating legal standard governing motions for appointed counsel in civil cases). I advised Ekanem in open court that he must submit any evidence supporting his claim within thirty days. I also ordered the City to serve Ekanem with the notice required by Local 56.2 for pro se litigants facing a motion for summary judgment. The City certifies that it complied with this order.

Ekanem has not filed any opposition to the City's motion for summary judgment more than one month after the deadline for his response. Accordingly, I accept all properly supported assertions in the City's statement of material facts as true. *See* N.D. Ill. Local Rule 56.1(b)(3)(C). However, Ekanem is still entitled to have the City's uncontested facts and his deposition testimony construed in the light most favorable to his claim. *See Coleman v. Donahoe*, 667 F.3d 835, 842 (7th Cir. 2012).

B.

With regard to the scope of Ekanem's race discrimination claim, I ruled in November 2012 that only one of his allegations was included in a timely EEOC charge: Ekanem's claim that the City, acting through someone other than Chief John McKillop, denied his July 30, 2009 request for reinstatement because of his race. *See* Dkt. No. 38 (denying City's motion to dismiss amended complaint).

In recounting the facts, I focus on evidence relating to this discrete failure-to-reinstate claim, keeping in mind that "acts outside of the statutory time frame may be used to support [a timely] claim." *Davis v. Con-Way Transp. Central Express, Inc.*, 368 F.3d 776, 786 n.4 (7th Cir. 2004) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

## II.

On December 1, 2008, Ekanem began working as a probationary Firefighter-EMT candidate with the Chicago Fire Department ("CFD"). Ekanem's employment started with a nine month probationary period consisting of classroom instruction at the CFD Fire Academy ("Fire Academy") for six months and field work for the final three months.

The Fire Academy portion of Ekanem's training had two components: (1) training on emergency medical procedures and (2) fire suppression and hazardous materials training. As part of his Fire Academy training, Ekanem was required to pass the National Registry of Emergency Medical Technicians-Basic exam ("NREMT-B exam") within six months. Ekanem understood that failure to pass the NREMT-B exam within six months of enrolling at the Fire Academy could result in termination. *See* Pl.'s Dep at 70:15-71:2.

Ekanem first took the NREMT-B exam in February 2009. After failing the exam, Ekanem attended at least five group tutoring

3

sessions offered by Fire Academy instructors. These group tutoring sessions consisted of reviewing the assigned reading materials and taking practice tests.

Ekanem failed the NREMT-B exam for a second time in March 2009. He then received individual tutoring from Arnold Godwin ("Godwin"), one of the EMT instructors at the Fire Academy. Godwin told Ekanem that he had a 100 percent success rate in helping Firefighter-EMT candidates pass the NREMT-B exam. Ekanem was under the impression that Godwin would tutor him until his third test date. However, the head instructor at the Fire Academy, Lt. Florez, interrupted their second tutoring session to say that Godwin could not continue tutoring Ekanem. Lt. Florez did not provide an explanation for this decision. Godwin remarked to Ekanem that the Fire Academy instructors had never ended one of his individual tutoring engagements with a white pupil in such an abrupt fashion. *See* Pl.'s Dep. at 123:2-4.

After Ekanem's tutoring sessions with Instructor Godwin ended, the Fire Academy instructors told Ekanem to stop seeking tutoring altogether. *See* Pl.'s Dep. at 205:22-24. Ekanem's instructors also pressured him to choose the earlier of two possible dates for his third and final attempt to pass the NREMT-B exam before his six month graduation deadline.

As with his previous two attempts, Ekanem failed the NREMT exam when he took it for a third time on May 11, 2009. Ekanem's

former tutor, Godwin, called him with the test results that night.  When Ekanem asked about next steps, Godwin advised him to speak with Instructor Daniel Hudson.  Ekanem called Hudson as soon he got off the phone with Godwin.  Hudson told Ekanem that there was nothing the Fire Academy instructors could do to help him and instructed Ekanem to turn in his equipment.

When Ekanem reported to the Fire Academy a few days later, his instructors allowed him to attend classes and made some attempt to prevent him from being discharged.  This turn of events led Ekanem to think that Hudson had given him false information on the night he learned about failing the NREMT-B exam for a third time.  Ekanem promptly submitted a form to the Director of Training, Richard Edgeworth, stating that he hoped to continue his studies at the Fire Academy.

On May 18, 2009, Chief John McKillop ("Chief McKillop"), Director of EMS training at the Fire Academy, summoned Ekanem to his office.  Chief McKillop informed Ekanem that the CFD only paid for Firefighter-EMT candidates to take the NREMT-B exam up to three times.  Ekanem asked if he could pay out of pocket to take the exam a fourth time.  Chief McKillop responded that Ekanem would still need to take a refresher course pursuant to the NREMT's policy.  Ekanem offered to pay for a refresher course on this own, but Chief McKillop did not respond to this suggestion.

Ekanem received a termination letter signed by Chief Charles Stewart III ("Chief Stewart"), the Director of CFD's Personnel Division, on or around May 18, 2009.[1] Chief Stewart's letter notified Ekanem that he was being discharged pursuant to the following provision of the labor agreement between the City and the Chicago Firefighters Union, Local No. 2:

> Terminations of probationary employees shall not be subject to the grievance procedure; however, upon the Union's request made within ten (10) days of notice of discharge to the employee and the Union, the employee and the Union may present evidence relating to the validity of the reasons or mitigating circumstances to the Department at a meeting between the Department and the Union; but any action taken by the Department shall be final and shall not be subject to the grievance procedure.

R. at 468 (henceforth referred to as "Section 9.1 hearing"). Ekanem did not speak with the union after he was terminated. Nor did the union, on its own initiative, request a Section 9.1 hearing to challenge Ekanem's termination.

After his termination, Ekanem took a refresher course for the NREMT-B exam in California and passed the exam in July 2009 on his fourth attempt. On July 30, 2009, Ekanem wrote a letter to Chief Stewart requesting reinstatement. While Ekanem was waiting for Chief Stewart to respond, he also sent a

---

[1] The City notes that Chief Stewart and Ekanem are both African-American. Dkt. No. 68 at ¶ 44. I draw no inference whatsoever from this fact. *See Winston v. Boatwright*, 649 F.3d 618, 626 (7th Cir. 2011) ("In Powers v. Ohio, [499 U.S. 400, 402 (1991)], the Supreme Court rejected the premise that persons of the same race cannot discriminate on the basis of their shared race[.]").

6

reinstatement request to the City's Director of Personnel on August 6, 2009. On August 16, 2009, Chief Stewart responded to Ekanem's original request for reinstatement. After directing Ekanem to submit his request to the City's Commissioner of Human Resources, Chief Stewart's letter stated that "it is not Fire Department policy to recommend the reinstatement of former employees [who] failed to complete training." R. at 474.

On August 24, 2009, Ekanem received a letter from Karina Ayala-Bermejo, the Acting Commissioner for the City's Department of Human Resources. Ms. Ayala-Bermejo has no independent recollection of reviewing Ekanem's request for reinstatement. *See* R. at 543, ¶ 8. Therefore, I give no weight to her statements about what she "would have" done upon receiving such a request. *Id*. at ¶¶ 9-11. The letter sent to Ekanem under Ms. Ayala-Bermejo's signature states that only career service employees who previously resigned are eligible for reinstatement. *See* R. at 616 (citing Rule XIII, Section 2 of the City's Personnel Rules). Therefore, Ekanem was not eligible for reinstatement under the City's personnel rules because of his status as a probationary employee who had been discharged.

The City's personnel rules also require a favorable recommendation from the appropriate department head before a former employee may be reinstated to his former position. *See* R. at 579-80. Chief Stewart testified that CFD does not recommend

7

the reinstatement of employees who were discharged for failing to complete training. Therefore, the City contends that Ekanem's status a former probationary employee is not the only reason he was ineligible for reinstatement.

At some point after he was terminated, Ekanem met with CFD Commander Carmelita Wiley-Earls ("Commander Wiley-Earls") in her office at the Fire Academy. Ekanem asked about the circumstances in which Firefighter-EMT candidates had been reinstated or "recycled" back into the Fire Academy training program. Commander Wiley-Earls showed Ekanem a computer-generated list of candidates who were reinstated to the Fire Academy following a discharge. Ekanem believes that three non-black candidates on this list were treated more favorably than he was.

### III.

The City has moved for summary judgment on the ground that Ekanem has no direct or circumstantial evidence to support his race discrimination claim. Although Ekanem has not opposed the City's motion, I "must still review the uncontroverted facts and make a finding that summary judgment is appropriate as a matter of law." *Nabozy v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996).

Ekanem has no direct evidence that he was discriminated against based on his race. *See* Pl.'s Dep. at 131:20-23 (testifying that he could not remember hearing any "racially

derogatory remarks" during his tenure at the Fire Academy). Although Arnold Godwin's comment that he had never been ordered to stop tutoring a while pupil is somewhat suspicious, there is no evidence that the CFD employee who ended Ekanem's personal tutoring sessions, Lt. Florez, played any role in denying his request for reinstatement. Thus, Godwin's comment has no bearing on whether the City's failure to reinstate Ekanem was discriminatory.

With no direct evidence supporting Ekanem's claim, the City is entitled to summary judgment unless the record contains evidence that Ekanem was treated less favorably than a similarly situated, non-black employee. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Coleman v. Donahoe*, 667 F.3d 835, 846-47 (7th Cir. 2012) (describing "similarly situated" prong of *McDonnell Douglas* burden-shifting framework in detail).

A.

All three of Ekanem's proposed comparisons fail to show that he was treated less favorably than a similarly situated non-black employee.

Two of Ekanem's proposed comparators, Fidel Serrano ("Serrano") and John Welsh ("Welsh"), failed to present a valid Illinois driver's license during Fire Academy training. Ekanem contends that Serrano and Welsh were terminated for this infraction, but later reinstated. The City argues that Welsh and

Serrano were never discharged from the Fire Academy. This factual dispute is irrelevant because Ekanem's assertion that Serrano and Walsh were discharged, even if true, do not support an inference of discrimination.

The dispositive flaw in Ekanem's proposed comparison to Welsh and Serrano is that he received more favorable treatment after committing the same infraction. Ekanem admitted at his deposition that did not have a valid Illinois driver's license at the beginning of class on January 12, 2009. *See* Pl.'s Dep. at 155:10-13. Unlike Serrano and Welsh, Ekanem was not discharged for this infraction and simply had to explain in writing why he forgot his license. Thus, Ekanem's own testimony shows that he received more lenient treatment than Serrano and Welsh when he committed the same infraction. The fact that Serrano and Welsh were later reinstated shows at most that they received roughly the same treatment as Ekanem after initially facing more severe punishment. No inference of discrimination arises where, as here, a Title VII plaintiff received more favorable treatment than his proposed comparators. *See Zayas v. Rockford Mem. Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014) (*McDonnell Douglas* framework requires evidence that similarly situated employee outside plaintiff's protected group "engaged in the same behavior and was treated more favorably").

Ekanem's proposed comparison to Christopher Clark ("Clark"), a white Firefighter-EMT candidate, is also flawed. Shortly after starting his training at the Fire Academy in July 2008, Clark began suffering from an undisclosed medical condition. On October 8, 2008, CFD's medical section ordered Clark to take a medical leave of absence for approximately two weeks. Clark failed the NREMT-B exam in October 2008 and again in November 2008. Although Clark had not passed the NREMT-B exam by the Fire Academy's six-month graduation deadline, the City allowed him to enroll in Ekanem's class starting on December 1, 2008 rather than terminating his employment. Ekanem contends that "recycling" Clark into the next class at the Fire Academy gave him three more opportunities (and up to five opportunities overall) to pass the NREMT-B exam. Ekanem's assertion has no support in the record because Clark passed the NREMT-B exam on his third attempt in March 2009.

In any event, Clark's situation is distinguishable from the circumstances that led to Ekanem's termination. The *McDonnell Douglas* framework requires evidence that Ekanem and Clark "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimerbly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000). Here, Clark's medical leave of absence placed him in a different position than Ekanem

when both men reached the end of their six month Fire Academy training without having passed the NREMT-B exam. Clark needed more time to pass the NREMT-B exam as an accommodation for his medical condition and related two week absence. In contrast, Ekanem has not presented any evidence that he failed the NREMT-B exam three times because of a medical condition or an extended absence. I fail to see how the City's decision to accommodate Clark's medical condition suggests that Ekanem was not reinstated because of his race.

B.

In addition to distinguishing Ekanem's proposed comparators, the City attempts to show that Ekanem was treated in the same manner as similarly situated, non-black Firefighter-EMT candidates. I need not analyze the City's proposed comparators because "[t]here is no 'similarly situated employee' analysis available to the employer to defeat a plaintiff's claim." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 588 (7th Cir. 2011).

Similarly, the City's contention that it did not discharge six black Firefighter-EMT candidates who failed the NREMT-B exam three times has not factored into my analysis of Ekanem's claim. *See id*. at 587 (rejecting district court's reasoning that "the evidence did not support an inference of discrimination because at least one Hispanic employee was not discriminated against in the same way" as Hispanic plaintiffs suing under Title VII).

12

IV.

The City's motion for summary judgment is granted for the reasons stated above.

**ENTER ORDER:**

_Elaine E. Bucklo_
**Elaine E. Bucklo**
United States District Judge

Dated: June 16, 2014